UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 JAN 25 PM 2: 18

CLERK
BY ___PC___
DEPUTY CLERK

| | |
|---|---|
| MARGARET A. RUSSO, Administratrix/ Personal Representative of the Estate of Laura B. DiPillo, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 5:15-cv-55 |
| THE BRATTLEBORO RETREAT, ) ) ) | |
| Defendant. ) | |

**OPINION AND ORDER ON MOTION TO COMPEL**
**(Doc. 19)**

This wrongful-death action arises out of the suicide of a young woman in May 2014 at The Brattleboro Retreat ("The Retreat") where she was a patient. The case is brought within the court's diversity jurisdiction. Under Fed. R. Evid. 501, Vermont state-law provisions concerning privilege and confidentiality apply in this case.

Plaintiff has filed a Motion to Compel (Doc. 19). Following discussions between counsel and the submission of supplemental answers to discovery, the parties have reduced their dispute to three areas:

1. Production of records of contact between The Retreat and the Joint Commission;
2. Production of records of contact between The Retreat and Health New England; and
3. Production of records of similar incidents.

The court held a hearing on the Motion to Compel on January 13, 2016, and has reviewed in camera the records supplied by The Retreat in response to (1) and (2). Both sets of records are identified in the privilege log prepared by counsel for The Retreat at pages 4 and 5. (*See* Doc. 25-3 at 5–6.)

**I.    Vermont's Medical Peer-Review Statute**

Under Fed. R. Civ. P. 26(b)(1), discovery is limited to "nonprivileged matter." As noted above, Vermont state-law provisions concerning privilege and confidentiality apply in this case. Vermont's medical peer-review statute provides that the "proceedings, reports, and records" of

peer-review committees "shall be confidential and privileged, and shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by such committee . . . ." 26 V.S.A. § 1443. A "peer review committee" means:

> the Vermont professional standards review organization or its subsidiary committees, the Vermont Program for Quality in Health Care, Inc. or its subsidiary committees, a peer review committee or other comparable committee established by a health maintenance organization in accordance with the provisions of 18 V.S.A. § 9414, or a committee of a state or local professional association or of a hospital or other health care provider which is formed to evaluate and improve the quality of health care rendered by providers of health services or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.

*Id.* § 1441.

## II. Joint Commission and Health New England Documents

Section 1441 lists four entities that qualify as a "peer review committee": (1) the Vermont professional standards review organization or its subsidiary committees; (2) the Vermont Program for Quality in Health Care, Inc. or its subsidiary committees; (3) a peer-review or other comparable committee established by an HMO in accordance with 18 V.S.A. § 9414; and (4) a committee of a state or local professional association or of a hospital or other health care provider. Under a literal reading of § 1441, the Joint Commission and Health New England do not appear to fit within any of those categories. The court is nevertheless satisfied that Vermont's peer-review statute prevents the disclosure of the Joint Commission and Health New England documents for the following reasons.

The Joint Commission (formerly known as the Joint Commission on Accreditation of Healthcare Organizations) fulfills an accrediting function for the Centers for Medicare and Medicaid Services ("CMS"), which regulates the provision of health care through those two programs. In the case of so-called "sentinel events" such as an untimely death, the Joint Commission conducts a review focused on the reasons for the incident and the steps taken to improve care in the future. Such an investigation is precisely the sort of proceeding contemplated by the Vermont peer-review statute.

Vermont courts have expressly held that the Joint Commission is a "peer review committee" under § 1441. *See Menard v. Brattleboro Mem'l Hosp., Inc.*, No. 17-1-00 Wmcv, at 5–6 (Vt. Super. Ct. Apr. 3, 2001) (concluding that, under a "literal reading" of Vermont's peer-review statute, the Joint Commission is not a "peer review committee," but that the work of the Joint Commission is "clearly peer review in nature" and that failing to interpret the statute broadly "would create an irrational exception to a system which endeavors to protect candor in peer review proceedings"); *see also White v. Leadbetter*, No. S37-9-90 Gicv (Vt. Super. Ct. June 28, 1991) (granting hospital's motion to quash based on § 1443; motion to quash included request to quash correspondence between the hospital and the Joint Committee on Accreditation of Health Care Organizations); *Skowyra v. Moskalewicz*, No. S963-85CnC (Vt. Super. Ct. Aug. 21, 1987) (concluding that, while the Joint Commission on Accreditation of Hospitals did not fall within the express definition of "peer review committee," it did fit "within the spirit of the statute"). Copies of these unpublished decisions are attached to The Retreat's Opposition (Doc. 25).

Justice Dooley's concurrence in *Wheeler v. Central Vermont Medical Center, Inc.*, 155 Vt. 85, 582 A.2d 165 (Vt. 1989), does not require a contrary result. In *Wheeler*, the hospital appealed a jury verdict awarding the plaintiff damages for negligently granting privileges to Dr. Wright, a surgeon who performed unsuccessful surgery on her. The plaintiff had "attempted through discovery to obtain peer-review materials from defendant to show what it knew about Dr. Wright, but defendant at all times asserted, and the trial court upheld, that the so-called peer-review privilege under 26 V.S.A. §§ 1441–1443 prevented disclosure." *Id.* at 87–88, 582 A.2d at 166. Justice Dooley wrote a concurrence stating that there were significant reasons to believe that the trial court had extended the reach of § 1443 too far. *Id.* at 97, 582 A.2d at 172 (Dooley, J., concurring). However, Justice Dooley was discussing the breadth of § 1443, not § 1441. It does not appear that the concern was whether the hospital's peer-review system was a "peer review committee" (a question under § 1441), but instead whether the action arose out of the matters which are subject to evaluation and review by such a committee (a question under § 1443).[1]

---

[1] In this case, there is no question that the action arises out of the matters that were reviewed by the Joint Commission and Health New England.

3

A second investigation was conducted by Health New England, which is the Massachusetts-based HMO that paid for the decedent's stay at The Retreat. In a manner similar to the Joint Commission, Health New England conducted an investigation of the incident and its causes. The investigation focused on issues of quality of care and whether professional errors occurred which were responsible for the tragic event. Such an inquiry is expressly covered by the Vermont peer-review statute for peer-review committees established by HMOs under 18 V.S.A. § 9414. Reading § 1441 broadly to achieve the goal of protecting candor in peer-review proceedings, the court concludes that Health New England qualifies as a "peer review committee."[2]

Plaintiff asserts that the materials at issue are not privileged because they were not created as part of a formal review process. (Doc. 32 at 6.) This court has previously stated that peer-review statutes like Vermont's do not protect "conversations and documents arising in the course of ordinary business operations" and that courts "generally apply the peer review privilege only when the formalities of a peer review process are clearly apparent." *Robinson v. Springfield Hosp.*, No. 109-CV-75, 2010 WL 503096, at *2 (D. Vt. Feb. 5, 2010). As *Menard* and the other cases cited above suggest, however, the investigations conducted by entities like the Joint Commission and Health New England are precisely the sorts of formal peer-review processes contemplated by the statute. The Joint Commission and Health New England were specifically designated to do this work; and their investigations are very different than a mere conversation between staff about "quality control." *See Robinson*, 2010 WL 503096, at *2 (quoting *Roach v. Springfield Clinic*, 623 N.E.2d 246, 250 (Ill. 1993)).

Plaintiff also asserts that there is no "product" of any peer-review committee in this case. (Doc. 32 at 9.) Section 1443's privilege extends to "[t]he proceedings, reports and records" of peer-review committees. 26 V.S.A. § 1443(a). The statute goes on to state that "information, documents, or records otherwise available from original sources are not to be construed as immune from discovery . . . merely because they were presented during the proceedings" of a peer review committee." *Id.* Thus, the privilege does not necessarily attach to all information that is reviewed by a peer-review committee. *Prouty v. Sw. Vt. Med. Ctr., Inc.*, No. 89-2-13 Bncv, 2013 WL 7346974, at *3 (Vt. Super. Ct. Oct. 30, 2013); *see also Golden v. Brattleboro*

---

[2] Notably, Health New England's investigation would appear also to be covered under a similar peer-review statute in Massachusetts. *See* M.G.L. ch. 111, §§ 1, 204.

*Mem'l Hosp.*, No. 337-7-08 Wmcv (Vt. Super. Ct. Feb. 4, 2010) (noting that Vermont's statutory privilege excludes "original sources" from immunity).[3]  The court has reviewed in camera the records supplied by The Retreat, and concludes that none of the materials in those records are "original sources"; the documents consist of communications regarding the investigations, a physician chart review, analysis, recommendations, and conclusions.

### III.  The Peer-Review "Privilege" was not Waived

Plaintiff asserts that any peer-review privilege "was lost when documentation was voluntarily provided by [the Joint Commission] and [Health New England] to the Retreat and by the Retreat to [the Joint Commission] and [Health New England]." (Doc. 32 at 9.)  Of course, privileges can be waived.  *See United States v. Yannai*, 791 F.3d 226, 240 (2d Cir. 2015) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) (voluntary disclosure of work product to adversary waives work-product privilege); *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential.  The act is let out of the bag, so to speak.").  Here, it is unclear whether the peer-review "privilege" can be waived; as the Vermont Supreme Court has suggested, a "strong argument" could be made that no waiver is permissible "since 26 V.S.A. § 1443 does more than provide a privilege, but arguably announces a mandatory policy against disclosure." *Wheeler*, 155 Vt. at 88 n.3.

The parties have not briefed that question—and the court need not decide it—because even assuming that the peer-review privilege is waivable, there is no evidence of waiver in this case.  The communications between The Retreat, the Joint Commission, and Health New England did not disclose information to an adversary or the public.  Rather, those communications were between participants in the peer-review process itself and were necessary to complete that process.  Plaintiff's position, if adopted, would effectively repeal the peer-review privilege since the process always depends on the submission of information to an external body.

---

[3] A copy of the Entry Order in *Golden* is attached as an exhibit to The Retreat's opposition.  (Doc. 25-2.)

## IV.    Records of Similar Incidents

With respect to the third issue, the court has ordered the production of records of similar incidents such as suicides and suicide attempts. The records available to Plaintiff note two recent incidents. The court will leave it to the parties in the first instance to define a reasonable scope of time within which to search for similar events such as five years prior to the incident in this case. If the parties cannot agree on a reasonable period of time, Plaintiff's counsel shall let the court know and the court will set a time period. As discussed with the parties at the hearing, confidentiality of other patients' identities and health information shall be maintained through redaction. The potentially relevant factual material concerns issues such as details of the suicide attempts, the preventative measures in place, the manner in which the attempts occurred, and any changes made in response. The details of other patients' care and history are irrelevant and confidential.

### Conclusion

For the above reasons, Plaintiff's Motion to Compel (Doc. 19) is DENIED insofar as it seeks production of records of contact between The Retreat and the Joint Commission or Health New England.

Dated at Rutland, in the District of Vermont, this 25 day of January, 2016.

Geoffrey W. Crawford, Judge
United States District Court